IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Jackson, September 4, 2024

## ROY T. LEWIS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Robertson County**
**Nos. 74CC2-2021-CR-375, 74CC4-2020-CR-686      Robert Bateman, Judge**

_____

**No. M2024-00406-CCA-R3-PC**
_____

Petitioner, Roy T. Lewis, appeals from the Robertson County Circuit Court's denial of his petition for post-conviction relief following a hearing, in which Petitioner alleged that he received the ineffective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered because trial counsel did not inform him of his offender classification. Following a careful review of the record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

Alexa M. Spata, Clarksville, Tennessee, for the appellant, Roy T. Lewis.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Robert J. Nash, District Attorney General; and Ann M. Kroeger, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In January 2021, the Robertson County Grand Jury indicted Petitioner for one count of aggravated assault. Petitioner pleaded guilty as charged and received a sentence of six years as a Range II offender to be suspended on probation. On July 30, 2021, the trial court issued a probation violation warrant based on Petitioner's arrest for four counts of theft of property over $1,000 and four counts of burglary. Petitioner was subsequently indicted for one count of theft of property over $1,000 and three counts of burglary of a motor vehicle. The State filed a notice to seek enhanced punishment for Petitioner as a career offender.

Pursuant to a negotiated plea agreement, Petitioner pleaded guilty to one count of burglary of a vehicle in exchange for a sentence of six years as a career offender, and the remaining three counts were dismissed. Petitioner also agreed to an order revoking his probation and agreed to serve that sentence in confinement, concurrently with his six-year sentence for the burglary conviction. As part of the agreement, Petitioner was furloughed for rehabilitation.

On January 27, 2023, the trial court entered an order terminating furlough after Petitioner was discharged from the rehabilitation program "due to using drugs on property for a second time." The trial court ordered that Petitioner's six-year sentences for both convictions be served in confinement.

Petitioner timely filed a pro se petition for post-conviction relief, alleging that his trial counsel was ineffective for failing to inform him that he would serve his sentence at 60 percent as a career offender. Following the appointment of counsel, Petitioner filed an amended post-conviction petition in which he alleged that trial counsel failed to advise him of the applicable release eligibility, coerced him into accepting the plea offer, failed to adequately prepare and investigate his case, and failed to file "all proper motions."

At the post-conviction hearing, Petitioner testified that his trial counsel told him only that his sentence would run concurrently with his previous sentence for aggravated assault. He said trial counsel did not advise him of his status as a career offender. He testified, "I am thinking they are going to be concurrent like she never said what range it was going to be or nothing like that, sixty percent or nothing like that. She just said concurrent so I am automatically thinking that it was going to be the same." Petitioner said that if he had known the plea agreement required him to serve 60 percent of his sentence before being eligible for release, he would "never" have accepted the plea offer. Petitioner believed he would serve his sentence at 35 percent like his previous sentence.

Petitioner testified that trial counsel did not file any suppression motions, "gather all the evidence[,]" or "get the witnesses, fingerprints and stuff." Trial counsel provided Petitioner with the State's discovery response and reviewed it with him. Petitioner thought that trial counsel should have hired a private investigator to investigate his case. Petitioner believed trial counsel was deficient by not "going through the protocol" of "filing motions [and] gathering all the evidence." Trial counsel met with Petitioner once in jail and twice in court. Petitioner claimed that he "wanted to have a trial" but that trial counsel "coerced [him] to take the charge."

On cross-examination, Petitioner admitted he had seven prior felony convictions and that he entered guilty pleas for each of those offenses. Petitioner acknowledged that

trial counsel and the court stated at the plea submission hearing that Petitioner was pleading guilty as a career offender, but Petitioner testified he "did not understand" what that meant. Petitioner said, "That went over my head."

Trial counsel could not recall any specific conversations she had with Petitioner. After reviewing her case file, she recalled that she met with Petitioner on three occasions. Trial counsel visited Petitioner at the jail on June 7, 2022, and she reviewed with him an email from the prosecutor containing the plea offer, which she testified stated that Petitioner would be classified as a career offender. However, the record shows that the plea agreement prepared by trial counsel does not state that Petitioner was a career offender or that he would serve 60 percent of his sentence.

Regarding Petitioner's release eligibility, trial counsel testified:

I cannot sit here and say I specifically remember explaining to him the difference of the percentages. I will say [Petitioner] was very knowledgeable about legal matters because of his prior experience, so do I believe that he knew that? Yes. Can I recall the specifics of our conversation on June 7th, 2022? No.

Trial counsel acknowledged that she did not file any motions to suppress evidence in Petitioner's case. She testified that the case was already set for trial when she was appointed, and she intended to file a motion to continue in order to have more time to prepare for trial. Petitioner sent her the names of two potential witnesses, and she called the individuals and spoke to them. She also reviewed discovery with Petitioner.

Trial counsel testified that Petitioner "absolutely" wanted to enter a plea agreement because the State was agreeable to Petitioner's furlough to rehabilitation. Trial counsel agreed that the evidence of Petitioner's guilt was very strong.

A transcript of Petitioner's guilty plea submission hearing was admitted as an exhibit to the post-conviction hearing. At the plea submission hearing, trial counsel announced the terms of the plea agreement as follows:

[Trial counsel]: Judge, we have reached an agreement with the State in this matter on both the VOP and his new charges. I have passed up the plea paperwork. On the VOP, that is 2020CR686, we have previously admitted that violation but have not resolved the disposition of that and we are asking to put that sentence into effect. It was a six-year sentence. [Petitioner] has quite a bit of credit, which is in his paperwork as well, waive fines and costs. That would run concurrent with the sentence on the new case, which is

2021CR375. That case, he would offer to plead guilty to Count Two, which is auto burglary, which is an E [f]elony. That would also be a six-year sentence, TDOC, to serve and that again, would be concurrent with the VOP, dismiss Counts One, Three and Four.

The trial court asked if Petitioner was "a range three[,]" and the prosecutor and trial counsel respectively answered, "It's career" and "He's a career." In its plea colloquy, the court asked Petitioner if he understood that he would "be sentenced to a six[-]year term of incarceration because [he] qualif[ied] as a career offender." The court also stated that the sentence would be served "at the same time as [Petitioner's] sentence in case 2020CR686," and Petitioner stated that he understood the agreement. The prosecutor gave the following factual basis for Petitioner's plea:

On July 12th of 2021, [Petitioner] entered the vehicle of a Tanya Vegch (phonetic) without her permission and consent and committed a theft, a Samsung tablet and some change were taken from the vehicle. Mr. Lewis was seen on video, the video of a neighbor of Ms. Vegch asked Verizon to do a ping on the tablet and it pinged at 2603 Douglas Street. Officers went to that location and [Petitioner] was found holding the tablet.

In its written order, the post-conviction court made findings of fact and conclusions of law and determined that Petitioner's plea was knowingly and voluntarily entered. The post-conviction court found, "it is clear from the plea colloquy that the Petitioner knew he would be sentenced as a career offender." Citing *Maine v. State*, the court concluded there was "no proof [P]etitioner received incorrect information. At best, the finder of fact could conclude that [P]etitioner was not informed of the release eligibility requirements for a career offender." No. E2004-00143-CCA-R3-PC, 2005 WL 1996631, at *1 (Tenn. Crim. App. Aug. 19, 2005) (reversing the trial court's dismissal of a post-conviction petition because the petitioner received incorrect information regarding his release eligibility date.), *no perm. app. filed*.

Regarding Petitioner's "vague claims" that trial counsel was deficient for failing to file motions or adequately investigate his case, the post-conviction court found that Petitioner did not present the testimony of any potential witnesses or present proof that any motions would have been successful.

Petitioner timely appeals the post-conviction court's denial of relief.

***Analysis***

- 4 -

Petitioner asserts his guilty plea was not entered knowingly and voluntarily because trial counsel did not adequately investigate his case and did not properly advise him of his release eligibility. The State responds that the post-conviction court properly denied relief.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

This Court will not disturb the findings of fact entered by the post-conviction court unless the evidence preponderates against them. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Our review of the lower court's application of law to its factual findings, however, is purely de novo. *Id*. at 457. When reviewing the post-conviction court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." *Id*. at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Id*. (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)).

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

As to the first prong of the *Strickland* analysis, the petitioner must establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. In the context of a guilty plea, the petitioner must establish prejudice by showing that "but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." *Hicks*, 983 S.W.2d at 246 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

When reviewing a guilty plea, this Court looks to both the federal standard as announced in the landmark case *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard as announced in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on*

*other grounds* by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea. . . ." *Mackey*, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats. . . ." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must look to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904. Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244. Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, "as well as any findings made by the [trial court] accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

The record confirms trial counsel's testimony at the post-conviction hearing that the plea agreement, which was signed by Petitioner, does not state that Defendant was a career offender or that his sentence would be served at 60 percent. At the plea submission hearing, the trial court informed Petitioner of the charges against him and the agreed-upon sentence. With respect to the sentencing consequences of his guilty plea, the trial court explained that Petitioner would serve his sentence as a "career offender" but did not specifically state that he would serve 60 percent of his sentence before being eligible for release.

The post-conviction court relied on *Maine v. State*, in which a panel of this Court reversed the post-conviction court's denial of relief where the petitioner was "significantly misinformed" about his release eligibility. 2005 WL 1996631, at *7. In that case, it was "undisputed that the petitioner received inaccurate information from his trial counsel, the prosecutors, and the trial court that he would be required to serve only twenty-five years of

- 6 -

his life sentence before becoming eligible for release." *Id*. at \*5. In *Jaco v. State*, our supreme court concluded that the petitioner's guilty pleas were knowing and voluntary where he was informed of his release eligibility date but not of the conditions he would be required to meet as a sex offender. 120 S.W.3d at 832 (distinguishing *Howell v. State*, 569 S.W.2d 428, 435 (Tenn. 1978), in which the court granted post-conviction relief on the basis that the petitioner received incorrect information about his parole eligibility date).

Turning to the *Blankenship* factors, there is nothing in the record to indicate the relative intelligence of Petitioner. The record shows, however, that Petitioner was familiar with criminal proceedings, having pleaded guilty to seven prior felony offenses. Petitioner was represented by counsel, who testified that she met with Petitioner on three occasions, and although she could not recall "the specifics of [their] conversation," she reviewed with Petitioner an email from the prosecutor that stated Petitioner would be classified as a career offender. Trial counsel also testified that Petitioner "absolutely" wanted to enter a plea agreement that would allow him to be furloughed to rehabilitation, and she testified the evidence of Petitioner's guilt was very strong. At the plea submission hearing, the trial court informed Petitioner of the terms of the plea agreement, including his career offender status. The agreement also dismissed other felony counts and allowed Petitioner's sentence for burglary to run concurrently with his sentence for a violation of probation.

We conclude that the record does not preponderate against the post-conviction court's conclusion that Petitioner's guilty plea was knowingly and voluntarily entered. Unlike the facts in *Maine* and *Howell*, Petitioner was not given inaccurate information about his release eligibility. Furthermore, Petitioner had significant reasons to accept the plea agreement, which allowed him to avoid a greater penalty that might have resulted from a jury trial. This Court has noted that "a failure to correctly inform the [petitioner] about parole eligibility dates, without more, would not be a basis for post-conviction relief." *Weston v. State*, No. 03C01-9612-CR-00484, 1998 WL 133834, at \*1 (Tenn. Crim. App. Mar. 25, 1998), *no perm. app. filed*. This is because "a prisoner has no constitutional right to conditional release prior to expiration of his sentence." *Brown v. State*, No. E1999-02290-CCA-R3-CD, 2001 WL 177056, at \*2 (Tenn. Crim. App. Feb. 23, 2001), *no perm. app. filed*.

Regarding Petitioner's claims that trial counsel was ineffective for failing to advise him of his release eligibility, the post-conviction court found no proof that Petitioner received incorrect information regarding his release eligibility. Thus, Petitioner failed to establish trial counsel's deficient performance. Although Petitioner testified that he would not have pleaded guilty had he known he would serve 60 percent before being eligible for release, trial counsel testified that Petitioner desired to enter the plea agreement, which dismissed several other counts and allowed him to be furloughed to rehabilitation. Thus, Petitioner failed to establish prejudice.

Regarding Petitioner's claims that trial counsel was ineffective for failing to adequately investigate the case and failing to file motions, we agree with the post-conviction court's assessment that Petitioner did not support these "vague" assertions by presenting the testimony of any potential witnesses or presenting any proof that whatever motions he claims counsel should have filed would have been successful. Petitioner is not entitled to relief.

CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE